**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MERRYL OSDOBY, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 2:22-cv-04199-NG-JMW |
| v. | **ECF Case** |
| HANDI-FOIL CORP., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT HANDI-FOIL CORP.'S MOTION FOR SUMMARY JUDGMENT**

KIRKLAND & ELLIS LLP
Michael A. Glick
Megan McGlynn (*pro hac vice*)
Gabrielle Durling (*pro hac vice*)
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-5000
michael.glick@kirkland.com
megan.mcglynn@kirkland.com
gabi.durling@kirkland.com

*Counsel for Handi-Foil Corp.*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................3

    Handi-Foil's Retail Pans and Containers ..............................................................3

    The Domestic Coil Suppliers' Process ................................................................5

    Plaintiff Merryl Osdoby ....................................................................................6

STANDARD OF REVIEW ...................................................................................7

ARGUMENT ......................................................................................................8

I.      Plaintiff Lacks Standing. .............................................................................8

II.    Plaintiff Lacks Evidence of Deception or Injury. ........................................13

    A.    There Is No Evidence That Handi-Foil's Labels Are Deceptive. ...........13

        1.    Plaintiff Has No Evidence of How a Reasonable Consumer Understands Handi-Foil's "Made in the USA" Claim. .............13

        2.    The Federal FTC Standard Does Not Control Plaintiff's New York State Law Claims. ..............................................................15

        3.    Even If This Court Enforced the FTC Standard, Plaintiff Does Not Raise a Material Dispute of Fact Regarding Deception. ...........19

    B.    Plaintiff Has No Evidence of Injury. ...................................................21

        1.    There Is No Evidence Plaintiff Paid a Price Premium. ...............21

        2.    Plaintiff's Other Damages Theories Are Legally Defunct. .........24

III.    At a Minimum, Handi-Foil Is Entitled to Partial Summary Judgment .................24

CONCLUSION .................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.P. Deauville, LLC v. Arion Perfume & Beauty, Inc.*,
    2014 WL 7140041 (N.D. Cal. Dec. 12, 2014) .................................................................16, 18

*Baker-Rhett v. Aspiro AB*,
    324 F. Supp. 3d 407 (S.D.N.Y. 2018) .......................................................................................8

*Bildstein v. MasterCard Int'l Inc.*,
    329 F. Supp. 2d 410 (S.D.N.Y. 2004) .....................................................................................21

*Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020) ....................................................................................................13

*Colella v. Atkins Nutritionals, Inc.*,
    348 F. Supp. 3d 120 (E.D.N.Y. 2018) ....................................................................................24

*Craig v. American Tuna*,
    Case No. 22-cv-473, ECF 133 (S.D. Cal. Dec. 21, 2023) .......................................................13

*Crawford v. Franklin Credit Mgmt. Corp.*,
    758 F.3d 473 (2d Cir. 2014) .................................................................................................8, 13

*D'Amico v. City of New York*,
    132 F.3d 145 (2d Cir. 1998) ....................................................................................8, 9, 11, 19

*de Lacour v. Colgate-Palmolive Co.*,
    2024 WL 36820 (S.D.N.Y. Jan. 3, 2024) ...............................................................15, 16, 18

*Esposito v. Info. Tech. Corp. of the Tri-States*,
    2022 WL 1155917 (S.D.N.Y. Apr. 19, 2022) ........................................................................24

*Feis v. United States*,
    394 F. App'x 797 (2d Cir. 2010) ..............................................................................................9

*Honeywell Int'l Inc. v. ICM Controls Corp.*,
    45 F. Supp. 3d 969 (D. Minn. 2014) ................................................................................17, 18

*Hughes v. Ester C Co.*,
    330 F. Supp. 3d 862 (E.D.N.Y. 2018) ....................................................................................14

*John v. Whole Foods Mkt. Grp., Inc.* (*Whole Foods II*),
    823 F. App'x 46 (2d Cir. 2020) ................................................................................................8

*In re Kind LLC "Healthy & All Nat." Litig.*,
    627 F. Supp. 3d 269 (S.D.N.Y. 2022).......................................................................... *passim*

*Kyszenia v. Ricoh USA, Inc.*,
    583 F. Supp. 3d 350 (E.D.N.Y. 2022) ................................................................21

*Lewis v. Casey*,
    518 U.S. 343 (1996) .............................................................................................8

*Loussier v. Universal Music Grp., Inc.*,
    2005 WL 5644421 (S.D.N.Y. July 14, 2005) ....................................................10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .............................................................................................8

*Madanat v. First Data Corp.*,
    282 F.R.D. 304 (E.D.N.Y. 2012) ......................................................................10

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
    542 F.3d 290 (2d Cir. 2008) .........................................................................22, 23

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .............................................................................................8

*Maurizio v. Goldsmith*,
    230 F.3d 518 (2d Cir. 2000) ..............................................................................13

*Nachman v. Tesla, Inc.*,
    2023 WL 6385772 (E.D.N.Y. Sept. 30, 2023) ..................................................25

*Ortho Diagnostic Sys., Inc. v. Abbott Lab'ys., Inc.*,
    920 F. Supp. 455 (S.D.N.Y. 1996) ....................................................................22

*Playtex Prods., LLC v. Munchkin, Inc.*,
    2016 WL 1276450 (S.D.N.Y. Mar. 29, 2016) ...................................................19

*Rice v. Penguin Purnam, Inc.*,
    289 A.D.2d 318 (NY App. Div. 2001) ...............................................................24

*Rodriguez v. Nassau Cnty.*,
    2019 WL 4674766 (E.D.N.Y. Sept. 25, 2019) ..................................................10

*RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*,
    527 F. Supp. 3d 305 (E.D.N.Y. 2021) ..........................................................21, 24

*Shannon v. N.Y.C. Transit Auth.*,
    332 F.3d 95 (2d Cir. 2003) ..................................................................................8

*Stutman v. Chem. Bank*,
    731 N.E.2d 608 (N.Y. 2000) .............................................................................24

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
    556 F. Supp. 3d 222 (S.D.N.Y. 2021) ...................................................................14

*Van Loan v. Hartford Accident & Indem. Co.*,
    2006 WL 3782709 (N.D.N.Y. Dec. 22, 2006) ...................................................9, 10

*Vaughn v. Consumer Home Mortg. Co.*,
    470 F. Supp. 2d 248 (E.D.N.Y. 2007) ..................................................................21

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...............................................................................................8

*Weinstock v. Columbia Univ.*,
    224 F.3d 33 (2d Cir. 2000) .....................................................................................9

*White v. Manhattan & Bronx Surface Transit Operating Auth.*,
    2022 WL 4227289 (S.D.N.Y. Sept. 13, 2022) ....................................................23

*In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.* (*Whole Foods I*),
    397 F. Supp. 3d 406 (S.D.N.Y. 2019) .............................................................9, 13

**Rules**

Fed. R. Civ. P. 56(a) ..........................................................................................................7

Fed. R. Evid. 801 ............................................................................................................10

L.R. 56.1 ................................................................................................................3, 5, 12

**Regulations**

2 C.F.R. § 176.160(a) ......................................................................................................17

16 C.F.R. § 323.2 .....................................................................................................16, 17

19 C.F.R. § 102.11 ..........................................................................................................17

19 C.F.R. § 134.1 ............................................................................................................17

86 Fed. Reg. 37022 .............................................................................................17, 18, 20

88 Fed. Reg. 15290 .........................................................................................................17

## INTRODUCTION

Handi-Foil Corp. ("Handi-Foil") is a leading marketer of disposable aluminum pans and containers for household use—from lasagna pans to cookie sheets, turkey roasters to cake pans, and dozens more.  Proud of its decades-long commitment to engineering and producing its pans in Illinois using American labor and supply and domestically built presses and dies, Handi-Foil labels its pans as "Made in the USA."

Plaintiff Merryl Osdoby does not dispute that Handi-Foil and its affiliates exclusively operate in Illinois and produce the challenged pans at facilities there.  Nevertheless, she accuses Handi-Foil of deceptively marketing its pans based on a sea of speculation as to the materials she believes are used to make them as well as reasonable consumers' understanding of the claim that the products are "Made in the USA."  Following nearly a year of discovery, however, Plaintiff lacks evidence to establish her speculative claims and Handi-Foil is entitled to summary judgment.

***There is no evidence that any product Plaintiff purchased incorporated foreign material.***
Across this litigation, Plaintiff has repeatedly shifted her theory as to why Handi-Foil cannot truthfully market its pans as "Made in the USA."  Plaintiff initially alleged that Handi-Foil was importing aluminum from various countries around the world to make its pans.  But after Handi-Foil repeatedly explained under oath and in documents that the materials its affiliates had imported were not used for the retail pans at issue in this case (but instead in the affiliates' unrelated business lines), Plaintiff changed course to lodge speculative allegations pertaining to other materials that she hypothesizes went into Handi-Foil's pans.  But regardless of the theory that Plaintiff settles on, she lacks any evidence that any single product she purchased actually contains foreign material.  In the absence of such evidence, Plaintiff lacks standing to pursue her claims.

***There is no evidence of deception.***  Plaintiff also failed to muster any evidence that a reasonable consumer would be misled by Handi-Foil's "Made in the USA" claim.  She did not retain any marketing expert, did not conduct any survey, and failed to identify any other evidence of deception whatsoever.  Instead, she contends she need not do so because the FTC has prescribed a generic definition of "Made in the USA," which—in her view and without any evidentiary support—Handi-Foil's pans fail to meet.  But Plaintiff offers no legal basis for applying the FTC's federal standard in lieu of New York law, nor any basis to conclude that reasonable consumers subscribe to the FTC's definition (which the FTC itself warns is flexible and context-specific).  In any event, even if the FTC standard provided the rule of decision here, the undisputed evidence demonstrates that Handi-Foil's "Made in the USA" label is entirely consistent with that definition.

***There is no evidence of injury.***  Finally, Plaintiff failed to establish she was injured as a result of the "Made in the USA" claim.  Though she alleged that she paid a "price premium" for Handi-Foil's pans, the lone expert she retained made no effort to calculate such a premium (or even obtain the data required to do so) and conceded that if he gets around to attempting such a calculation in the future, it may well show that no such premium exists.  On the heels of that admission, Plaintiff resorts to misstating Handi-Foil internal documents and relying on her own self-serving testimony—efforts that plainly fail to establish the required injury.  And without evidence that she was injured by the "Made in the USA" claim in the first place, Plaintiff's claims are dead on arrival and she is not entitled to damages of any kind, including statutory damages.

Each of these failures—lack of standing, lack of deception, and lack of injury—independently defeats Plaintiffs' claims; together, they overwhelmingly dictate summary judgment in Handi-Foil's favor.  The time for Plaintiff to rely on mere allegations is past, and without requisite evidentiary support, she cannot satisfy her burden to establish her claims.

## BACKGROUND

### Handi-Foil's Retail Pans and Containers

Handi-Foil is a family-owned marketer of disposable aluminum products that are sold to consumers at retail establishments like Walmart and Stop & Shop.  *See* Handi-Foil's L.R. 56.1 Statement of Material Facts ("SMF") ¶¶ 1, 9.  In total, Handi-Foil markets dozens of pan and container products for food preparation and storage.  *Id.* ¶¶ 9-10, 32.  While those pans and containers vary by size, shape, function, and color (among other factors), they all have at least one thing in common: they are all manufactured in Illinois, where Handi-Foil and its affiliates exclusively operate.  *Id.* ¶¶ 6, 10, 39.  Relevant here, one of those affiliates, HFA, Inc. ("HFA"), actually manufactures the retail pans later marketed by Handi-Foil, which are at issue in this case. *Id.* ¶ 5.  At the same time, HFA also manufactures certain *other* pans and containers, which HFA (not Handi-Foil) markets to its own institutional customers (such as restaurants, caterers, and packer processors).  *Id.* ¶¶ 3, 5.  Those institutional products are not at issue here.  *Id.* ¶ 4.

Handi-Foil's pans are manufactured through a complex technical process developed with hundreds of millions of dollars of capital investment over the course of several decades.  *Id.* ¶ 8.  Each product is prepared pursuant to a precise bill of materials identifying all components incorporated into the product by item number and quantity.  *Id.* ¶ 13; *see also* Ex. 20 (containing exemplar bill of materials).[1]  For each pan, all of the components (as reflected on the bill) are sourced from domestic suppliers or made in-house by an Illinois-based Handi-Foil affiliate.  *Id*.

The primary input used to make Handi-Foil's pans are massive aluminum coils, which are lengthy rolled strips of aluminum generally weighing between ▓▓▓▓▓▓▓▓▓.  *Id.* ¶ 14.[2]

---

[1] All "Ex." references are to exhibits annexed to the Declaration of Michael Glick filed herewith.

[2] Handi-Foil's accompanying L.R. 56.1 statement includes a photo of exemplar coils as well as other photos depicting parts of the manufacturing process described herein.  *See id.* ¶¶ 15-35.

The coils used to make the retail pans at issue in this case are purchased exclusively from suppliers in the United States (the "Domestic Coil Suppliers"), with each coil specially ordered to meet the requirements of a specific type of pan. *Id.* ¶¶ 16-18. That is because the various pans have varying needs as to alloy (the mix of metals combined with the aluminum), gauge (thickness), temper (hardness), width, coating, and more. *Id.* ¶¶ 19-20.

To begin the manufacturing process, ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████ *Id.* ¶¶ 21-22. All of the █████████████████████████ used to manufacture Handi-Foil's pans are themselves specially manufactured in the United States. *Id.* ¶¶ 23-24. ███████████████████████

███████████████████████████████████████████████████████████████████████████

██████████████████████████████████ *Id.* ¶¶ 25-29. ███████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

██████████████████████████████████ *Id.* ¶¶ 32-34. ███████████████████████

███████████████████████████████████████████████████████████████████████ *Id.*

¶ 37. ███████████████████████████████████████████████████████████████████

███████████████████████████████████████ *Id.* ¶¶ 37-38. In total, a single, multi-ton coil can be used to make tens of thousands of individual pans through this process. *Id.* ¶ 40.

Reflective of this manufacturing process, as well as its proud commitment to and investment in American jobs, machinery, and supply, Handi-Foil labels its pans as "Made in the USA" or "Made in ." *Id.* ¶ 11.

### The Domestic Coil Suppliers' Process

Were the process described above not enough, the Domestic Coil Suppliers' process of creating the coils later used to make Handi-Foil's pans itself entails numerous heavy manufacturing steps spanning approximately three weeks, all of which also take place exclusively in the United States. *See id.* ¶¶ 41, 71. ████████████████████████████████████

████████████████████████████████████████████ *Id.* ¶ 42.[3] For the coils used to make Handi-Foil's pans, the Domestic Coil Suppliers predominantly melt ██████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████). *Id.* ¶¶ 30, 44-46. Indeed, as relevant to this litigation, all of the Handi-Foil products that Plaintiff alleges she purchased derive from coils made exclusively from ████████

███████████, as do nearly ████ of Handi-Foil's pans in total. *Id.* ¶¶ 98, 46. The remaining approximately ████ of pans derive from coils that are still made ████████████████████

██████(████), but for which the suppliers also melt ████████████████████████

████████████████████. *Id.* ¶ 47.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████. *Id.* ¶ 48. █████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████ *Id.* ¶¶ 50-53. ████████████████████████████████

---

[3] Again, Handi-Foil's L.R. 56.1 statement provides photos of the process taken from one of the Domestic Coil Supplier's facilities in ████████. *See id.* ¶¶ 43-69.



████████████████████████████████ *Id.* ¶¶ 53-54. ████████

████████████████████████████████████████████

███████ *Id.* ¶ 56. ████████████████████████████e. *Id.*

¶ 58. ████████████████████████████████████

████████████████████████████████████████████

███████. *Id.* ¶¶ 59-61. █████████████████████████

████████████████████████████████████████████

███████████████████████████ *Id.* ¶¶ 65-70.

### Plaintiff Merryl Osdoby

This litigation was prompted by a purportedly spontaneous discussion at a family event in 2022 between Plaintiff and her attorney, who is also her brother-in-law and who had threatened identical litigation against Handi-Foil years earlier. *Id.* ¶¶ 80-82. After that discussion, Plaintiff first came to believe Handi-Foil's pans were not made in the United States. *Id.* ¶ 86.

Plaintiff contends that she purchased four Handi-Foil products—the Giant All Purpose Pan & Lid, the Eco-Foil King Size Roaster Pan, the Roaster/Baker Pan, and the Giant Lasagna Pan—at various ShopRite locations in New York from 2018 through 2022. *Id.* ¶¶ 73-74. However, Plaintiff was unable to "provide dates or months of [her] purchases" "with specificity," *see id.* ¶ 75, and did not produce receipts or records of her purchases in discovery, *id.* ¶ 76. Moreover, records associated with Plaintiff's ShopRite Price Plus® club card account obtained in response to a subpoena served by Handi-Foil did not indicate any purchases of Handi-Foil products during the 2-year period for which records were available. *Id.* ¶¶ 77-79.

Plaintiff filed suit in July 2022, asserting counts under each of N.Y. General Business Law Sections 349 and 350 ("NY GBL"). The parties participated in nearly a year of discovery (which was extended at Plaintiff's request) during which Handi-Foil produced more than

5,100 documents, 60 pages of responses to 25 interrogatories, and testimony from the only two Handi-Foil employees that Plaintiff sought to depose.

Plaintiff has never contested that Handi-Foil's pans are produced at facilities in Illinois. Instead, across 18 months of litigation, Plaintiff has advanced shifting theories challenging Handi-Foil's "Made in the USA" claim on the basis of various materials she believes were used to make those pans.  Originally, Plaintiff alleged in her Complaint (and Amended Complaint) that Handi-Foil's pans were "made out of foreign-sourced aluminum and plastic"—including, she alleged, materials "import[ed] ... from China, Turkey, Italy, Russia, Portugal, Germany, Belgium and Greece"—as opposed to coils purchased domestically.  ECF 1 & ECF 23 ¶¶ 15, 29.  Over time, however, Plaintiff appears to have abandoned that theory, instead articulating three other theories of deception.  In addition to (i) her initial theory that Handi-Foil itself imports aluminum coils (referred to herein as the "Imported Coil Theory"), Plaintiff has alleged that Handi-Foil's pans derive from (ii) coils imported by the Domestic Coil Suppliers and passed on to be used for Handi-Foil's pans (the "Supplier-Imported Coil Theory"); (iii) coils that were prepared from imported, melted down "primary" aluminum (the "Primary Aluminum Theory"); and/or (iv) coils that were prepared from aluminum that came from imported bauxite and/or alumina (the "Bauxite/Alumina Theory").  *See, e.g.*, ECF 53 at 1-2; Pl. Class Cert. Mem. at 8, 10.

Because the ample discovery record fails to raise a genuine issue of material fact to support a claim as to any of these theories, Handi-Foil now moves for summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Although the Court must draw all inferences in favor of the non-moving party, a plaintiff must "come forward

with specific facts showing that there is a genuine issue of material fact for trial." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003). In doing so, a plaintiff "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [her] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts"). The moving party itself need not establish facts to merit summary judgment in its favor, but instead "may satisfy its burden by pointing to an *absence* of evidence to support an essential element of the nonmoving party's case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (emphasis added and alterations and quotations omitted).

## ARGUMENT

## I.    PLAINTIFF LACKS STANDING.

At the outset, Plaintiff lacks standing to pursue claims based on Handi-Foil's "Made in the USA" claim because there is no evidence that any product she purchased actually incorporated foreign material. To establish Article III standing, a plaintiff must "set forth by affidavit or other evidence specific facts" identifying some cognizable injury and "a causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also John v. Whole Foods Mkt. Grp., Inc.* (*Whole Foods II*), 823 F. App'x 46, 48 (2d Cir. 2020). Even in a class action, it is no answer that other members of the class (here, other purchasers of Handi-Foil products) were injured: "[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see also Warth v. Seldin*, 422 U.S. 490, 508 (1975) (plaintiff must state "specific, concrete facts demonstrating that the challenged practices harm[ed] him"); *Baker-Rhett*

8

*v. Aspiro AB*, 324 F. Supp. 3d 407, 415 (S.D.N.Y. 2018) ("Article III standing cannot be acquired through the back door of a class action." (alteration adopted and quotations omitted)).

In the context of Plaintiff's challenge, this means that she must identify "some particularized proof" that she herself purchased a Handi-Foil product that derived from imported material; she cannot simply "situate the product [she] purchased … within a universe of products ... which were [allegedly] sold illegally." *In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.* (*Whole Foods I*), 397 F. Supp. 3d 406, 422-23 (S.D.N.Y. 2019), *aff'd*, *Whole Foods II*, 823 F. App'x at 48. However, Plaintiff here lacks evidence that ***any*** Handi-Foil product—let alone the ones that she purchased—derived from foreign material, no matter the theory she advances.

Imported Coil Theory.  As Plaintiff's apparent abandonment of her original theory suggests, there is no evidence whatsoever that any of Handi-Foil's retail pans were made from coils imported by Handi-Foil or its affiliates, as opposed to coils purchased from the Domestic Coil Suppliers.  Although Handi-Foil openly acknowledged during (and even before) discovery that HFA occasionally imported a small percentage of its coils for use exclusively in products that HFA markets to its institutional customers (which are not at issue in this case), those imported coils were never used to make any Handi-Foil retail products (including those purchased by Plaintiff).  *Id.* ¶ 89.  Plaintiff has not identified any evidence to the contrary, and there is none.[4]

---

[4] Plaintiff suggested in discovery that her failure to identify any evidence supporting her theories can be excused because *Handi-Foil* has (in her view) not *dis*proven Plaintiff's speculation.  *See, e.g.*, Ex. 11 (Interr. 21 Resp.) ("Handi-Foil has shown us nothing that can dispel the idea that any one of the imports ... *could* wind up in a retail product." (emphasis added)).  That argument misunderstands the law: *Plaintiff* bears the burden of offering "some hard evidence showing that [her] version of the events is not wholly fanciful."  *D'Amico*, 132 F.3d at 149.  Handi-Foil is "not required to affirmatively disprove each element of [P]laintiff's claim."  *Feis v. United States*, 394 F. App'x 797, 798-99 (2d Cir. 2010); *see also Van Loan v. Hartford Accident & Indem. Co.*, 2006 WL 3782709, at *1 (N.D.N.Y. Dec. 22, 2006) ("[S]ummary judgment requires the parties to 'put up or shut up.'" (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000))).

Supplier-Imported Coil Theory.  There is likewise no evidence that any of the Domestic Coil Suppliers supplied imported coils to HFA, Handi-Foil, or any other Handi-Foil affiliate— much less that such supplier-imported coils were used to make any Handi-Foil retail pan.

In discovery, Plaintiff produced pages printed by her counsel █████████████████ ████████████████████████, which Plaintiff contended show that the Domestic Coil Suppliers imported some "aluminum sheet" and "aluminum coils." *Id.* ¶ 93.  At the outset, this Court cannot consider ██████████████ because they are inadmissible hearsay, which "cannot be relied upon to defeat summary judgment."  *Rodriguez v. Nassau Cnty.*, 2019 WL 4674766, at *13 (E.D.N.Y. Sept. 25, 2019), *aff'd*, 830 F. App'x 335 (2d Cir. 2020).  Those printouts contain quintessential out-of-court statements regarding materials purportedly imported by the Domestic Coil Suppliers, which Plaintiff is offering for the truth of the matter asserted (*i.e.*, that those companies actually imported such materials).  *See* Fed. R. Evid. 801; *Loussier v. Universal Music Grp., Inc.*, 2005 WL 5644421, at *4 (S.D.N.Y. July 14, 2005) ("printouts from the eBay website" inadmissible when offered to prove truth that products "were being sold on eBay").  Indeed, relying on ████████████ ████████ is particularly inappropriate here because ███████ itself disclaims the accuracy of its data:



█████████████████████████████[5]  Especially in light of these clear warnings, █████████████ provide no basis to deny summary judgment.  *Madanat v. First Data Corp.*, 282 F.R.D. 304, 311 (E.D.N.Y. 2012) ("[T]he contents of an unauthenticated website are extremely unreliable.").

---

[5] Lest there by any doubt, █████████ further states: ███████████████████████████████ ████████████████████████████████████████████████████████████████████████████" *Id.*

Even if one credits ███████████████, however, they offer no suggestion whatsoever that the Domestic Coil Suppliers eventually sent the imported materials referenced in those printouts to Handi-Foil (or any of its affiliates), as opposed to one of the suppliers' hundreds, if not thousands, of other customers. SMF ¶¶ 94-96. Indeed, the printouts do not reference Handi-Foil (or HFA) at all, nor do they indicate that the referenced aluminum sheet/coils were of the type that could be used to make Handi-Foil's pans. *Id.* ¶¶ 95, 97. There is simply no evidence tying those materials to Handi-Foil or its pans (and certainly not the pans purchased by Plaintiff), and Plaintiff's pure speculation that such materials found their way into Handi-Foil's pans is far from the "hard evidence" necessary to defeat summary judgment. *D'Amico*, 132 F.3d at 149.

Primary Aluminum Theory. Plaintiff again offers only speculation in support of her theory that Handi-Foil purportedly used coils made from imported primary aluminum to make the pans she purchased. For good reason: *none* of the four Handi-Foil products that Plaintiff contends she purchased used *any* primary aluminum at all. To the contrary, each of those pans are part of Handi-Foil's "Eco-Foil" product line, which consists of products made of 100% *recycled* aluminum. SMF ¶ 98. By definition, coils made from 100% recycled aluminum do not use any primary aluminum—imported or otherwise. *Id.* ¶ 99. Plaintiff therefore cannot establish particularized harm based on imported primary aluminum.

Bauxite/Aluminum Theory. In the absence of any evidence that the Handi-Foil products she purchased derived from imported coils or even domestic coils prepared using imported primary aluminum, Plaintiff is forced to go back even further—years or decades earlier—in the hopes of identifying some foreign material bearing some distant relationship to the products she purchased. Thus, Plaintiff unveiled a new theory regarding "bauxite" and "alumina"—two words not even mentioned in her Complaints or cited by Plaintiff in her discovery responses as grounds for

11

Handi-Foil's alleged deception.  *See generally* ECF 1, 23; Exs. 9 & 10 (Resps. to Interr. No. 8).

To take a step back (as this theory requires): Aluminum does not occur naturally in the environment.  Rather, aluminum is smelted from alumina, which is a fine, white powder-like substance.  SMF ¶¶ 113-14.  Alumina itself does not naturally occur in the environment either; instead, it is refined from bauxite, which is a brownish, dirt-like rock.  *Id.* ¶ 114.[6]  Accordingly, Plaintiffs' Bauxite/Alumina theory is premised on the notion that, if the domestically-sourced coils used to make her Handi-Foil pans were made from aluminum that was originally smelted from alumina refined from foreign-mined bauxite, Handi-Foil deceived her.

But again, Plaintiff can only speculate that the products she purchased trace back to foreign-mined bauxite or foreign-refined alumina.  As discussed above, the products Plaintiff contends she purchased were all made from coils prepared using 100% recycled aluminum, meaning aluminum that would have had to be melted and fashioned for use at least once before it was recycled and melted again to prepare a coil for Handi-Foil.  *Id.* ¶¶ 98-99, 118.  And because aluminum can be recycled repeatedly, a particular piece of recycled aluminum may derive from primary aluminum (or, in reality, many different pieces of primary aluminum) originally produced years or decades earlier from domestically mined bauxite and recycled multiple times over before being collected to prepare a coil for Handi-Foil.  *Id.* ¶ 119.  Plaintiff simply offers no evidence that might trace the products she purchased back to bauxite or alumina mined or refined abroad.

*   *   *   *   *

In the absence of evidence that the Handi-Foil products she purchased incorporated foreign material—be it foreign coils, primary aluminum, or bauxite—Plaintiff cannot establish a non-speculative particularized injury.  Her claims therefore fail, and Handi-Foil is entitled to

---

[6] Handi-Foil's L.R. 56.1 statement again provides exemplar images of bauxite and alumina.  SMF ¶¶ 107, 113.

summary judgment.  *See Whole Foods I*, 397 F. Supp. 3d at 429 (granting summary judgment where plaintiff failed to "come forward with non-speculative evidence on which a jury could reliably find that any of the items that he bought" did not match the seller's representation); *see also Craig v. American Tuna*, Case No. 22-cv-473, ECF 133 (S.D. Cal. Dec. 21, 2023) (no standing in false-labeling case brought by Plaintiff's counsel because plaintiff had no evidence of injury).

## II.   PLAINTIFF LACKS EVIDENCE OF DECEPTION OR INJURY.

Even if Plaintiff could muster standing for one or more of her scattershot theories (and she cannot), Handi-Foil is still entitled to summary judgment because Plaintiff lacks any evidence to support multiple required elements of her NY GBL claims.  To establish a violation of Sections 349 and 350, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  *In re Kind LLC "Healthy & All Nat." Litig.*, 627 F. Supp. 3d 269, 280 (S.D.N.Y. 2022) (quotations omitted); *see also Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020). Here, Plaintiff's "complete failure of proof" as to the "essential" deception and injury elements provide multiple independent summary judgment grounds.  *Crawford*, 758 F.3d at 486.

### A.   There Is No Evidence That Handi-Foil's Labels Are Deceptive.

#### 1.   Plaintiff Has No Evidence of How a Reasonable Consumer Understands Handi-Foil's "Made in the USA" Claim.

Plaintiff's claims fail at the outset because she has no evidence that a reasonable consumer would be deceived by Handi-Foil's "Made in the USA" claim.  The NY GBL requires "more than a mere possibility" that an allegedly misleading statement "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *See Kind*, 627 F. Supp. 3d at 282. Instead, the statement must be "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *See id.* at 280 (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521-22 (2d Cir.

13

2000)).  To satisfy the "reasonable consumer" standard, a plaintiff must proffer more than her "own conclusory allegations and 'anecdotal' testimony," *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 872 (E.D.N.Y. 2018); rather, a plaintiff must "introduce evidence" showing "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" and "believe the plaintiff['s] proffered theory of deception," *Kind*, 627 F. Supp. 3d at 282 (quotations omitted).  That means that "a plaintiff must adduce extrinsic evidence—ordinarily in the form of a survey—to show how reasonable consumers interpret the challenged claim[]."  *Hughes*, 330 F. Supp. 3d at 872 (footnote omitted).

Plaintiff has failed to identify any evidence at all—extrinsic or otherwise—to establish that any portion of the public "acting reasonably in the circumstances" could be misled by Handi-Foil's "Made in the USA" claim.  *Kind*, 627 F. Supp. 3d at 282 (quotations omitted).  Indeed, when expressly asked to identify "all facts and evidence" supporting her contention that reasonable consumers would be deceived by Handi-Foil's labels, Plaintiff did not identify even a single piece of evidence.  Ex. 12 (Resp. to Interr. No. 23) (citing nothing).  She ran no survey, retained no marketing expert, and failed to cite any produced document, interrogatory response, or excerpt of deposition testimony that suggests a reasonable consumer would find Handi-Foil's labels false or misleading.  *See Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 260 (S.D.N.Y. 2021) (an "interrogatory response constitutes an admission and limits [a plaintiff's] potential claims" (alterations adopted and quotations omitted)).

Without such evidence, Plaintiff cannot show that a reasonable consumer would be deceived by Handi-Foil's claim—no matter which of her ever-shifting theories she wishes to apply.  Take Plaintiff's Bauxite/Alumina theory for example, and assume for now that Plaintiff could demonstrate that the aluminum used in preparing the coils for Handi-Foil's pans was smelted

from alumina refined from foreign-mined bauxite. There is *no evidence* that a reasonable consumer would think an aluminum-based product manufactured in the complex and technical manner of Handi-Foil's pans could not be truthfully labeled as "Made in the USA"—even if it traced back at some undefined point in time (potentially decades earlier) to foreign-mined bauxite (a brownish rock bearing no resemblance to the end product). Indeed, Plaintiff herself conceded that she was not thinking about bauxite when she purchased Handi-Foil's products—nor would she expect a reasonable consumer to do so. *See* SMF ¶¶ 104-05.

Because Plaintiff has no evidence of a reasonable consumer's understanding of "Made in the USA" in the context of Handi-Foil's pans, she cannot establish the required deception element of her claims. *See Kind*, 627 F. Supp. 3d at 283 (granting summary judgment because "plaintiffs have not introduced evidence that could allow a factfinder to determine a reasonable consumer's understanding of" the challenged phrase); *see also de Lacour v. Colgate-Palmolive Co.*, 2024 WL 36820, at *7 (S.D.N.Y. Jan. 3, 2024) (similar).

### 2. The Federal FTC Standard Does Not Control Plaintiff's New York State Law Claims.

In the absence of any evidence relating to reasonable consumers' understanding of "Made in the USA" in relation to Handi-Foil's pans, Plaintiff has retreated to argue (without citation) that a consumer "would expect" a product marketed as "Made in the USA" "to be Made in the USA pursuant to the law." Ex. 12 (Resp. to Interr. No. 23). And by "pursuant to the law," she appears to mean pursuant to the FTC's "Made in USA" standard. *See* ECF 53 at 1. Plaintiff's effort fails for several reasons.

*First*, because Plaintiff brings claims under the NY GBL, this Court is tasked with applying state law, not any definition that might exist in federal law (including the FTC's). This Court is not "the handmaiden of the FTC" or any other federal agency, and it need not enforce FTC or other

federal regulations in the context of Plaintiffs' state-law claims. *See A.P. Deauville, LLC v. Arion Perfume & Beauty, Inc.*, 2014 WL 7140041, at *4 (N.D. Cal. Dec. 12, 2014) (dismissing claim where claimants "d[id] not suggest an alternative avenue" other than application of the FTC standard "by which they might plausibly prove that [the] U.S. origin statements mislead consumers"). Instead, the well-established inquiry under §§ 349 and 350 is whether "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Kind*, 627 F. Supp. 3d at 282. Plaintiff has not proffered *any* evidence suggesting that the FTC standard (or any of the multiple other possible federal definitions, as discussed below) answers that question or that reasonable consumers in today's marketplace share the FTC's view. Indeed, Plaintiff herself admitted that she has never reviewed the FTC rule, *see* Ex. 4 (Osdoby Dep. Tr.) 62:13-21, 63:23-64:12, and actually misstated it at deposition, *see id.* at 64:13-65:15 (testifying (incorrectly) that the standard permits a "Made in the USA" claim if "five percent of the materials or less [are] used from non-U.S. sources"). Plaintiff offers no basis to find that NY GBL claims premised on a "reasonable consumer" standard should turn on a federal definition that she herself did not rely upon. *See also de Lacour*, 2024 WL 36820, at *5 n.7 (granting summary judgment in part because plaintiffs failed to offer evidence that reasonable consumers shared a Better Business Bureau definition).

*Second*, Plaintiff is wrong to suggest that there is an obvious and universal definition for "Made in the USA" even under federal law. To the contrary, even among federal agencies, "Made in the USA" means different things: while the FTC has promulgated one definition, *see* 16 CFR § 323.2 (defining term to mean that the "final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and all or virtually all ingredients or components of the product are made and sourced in the United

States"), regulations under the American Recovery and Reinvestment Act of 2009 "include within the definition ... 'a manufactured good that consists in whole or in part of materials from another country' that 'has been substantially transformed in the United States into a new and different manufactured good distinct from the materials from which it was transformed.'" *Honeywell Int'l Inc. v. ICM Controls Corp.*, 45 F. Supp. 3d 969, 988 (D. Minn. 2014) (quoting 2 C.F.R. § 176.160(a)). And regulations deployed by U.S. Customs and Border Protection offer yet another definition by "incorporat[ing] a concept of 'substantial transformation' in defining the foreign 'country of origin' of a good." *Id.* (citing 19 C.F.R. §§ 134.1, 102.11); *see also* 88 Fed. Reg. 15290-91 (USDA proposing separate definition for "Product of USA" and "Made in the USA" claims). Thus, "a statement that a product is made in a particular country"—including that it is "Made in the USA"—"does not have a universal and definitive meaning." *Honeywell*, 45 F. Supp. 3d at 988-89. That is precisely why would-be plaintiffs are required to introduce evidence of how a reasonable consumer actually interprets the term *in the specific circumstances of a given product*.

*Third*, even if the FTC definition had some relevance here, that definition is—by the FTC's own admission—inherently indeterminate and therefore incapable of alone answering the question of how reasonable consumers would interpret Handi-Foil's labels absent additional evidence. As noted, the FTC standard provides that a "Made in the USA" claim is appropriate if "[i] the final assembly or processing of the product occurs in the United States, [ii] all significant processing that goes into the product occurs in the United States, and [iii] all or virtually all ingredients or components of the product are made and sourced in the United States." 16 CFR § 323.2. That standard is not self-executing. Rather, per the FTC itself, the standard—and specifically the terms "all or virtually all" and "significant processing"—"intentionally incorporate[s] flexibility" to "address a changing marketplace." 86 Fed. Reg. at 37028; *see id.* at 37027 (acknowledging "the

flexibility inherent in the 'all or virtually all' analysis"). Indeed, the FTC has explained that "there is no single 'bright line' to establish when a product is or is not 'all or virtually all' made in the United States." *Id.* at 37028. Instead, the inquiry turns on multiple factors, including "the portion of the product's total manufacturing costs attributable to U.S. parts and processing; how far removed from the finished product any foreign content is; and the importance of the foreign content to the form or function of the product." *Id.* The FTC did not offer any objective metrics on which to measure a product as to those factors, however. Likewise, the FTC described an exception where a raw material is unavailable in the United States, but offered no objective threshold as to lack of availability. *Id.* at 37027 & n.63.

Because the FTC rule is facially "product and context specific," simply citing that rule (as Plaintiff attempts to do) is not enough to establish how a consumer applying that flexible definition would understand Handi-Foil's labels. *Honeywell*, 45 F. Supp. 3d at 988. Indeed, courts have repeatedly declined to permit plaintiffs alleging violations of state consumer protection acts (like the NY GBL) to ignore their burden to come forward with actual evidence of deception and proceed to trial on whether a product complies with an amorphous federal regulation. *See id.* at 988-90 (FTC standard insufficient to avoid summary judgment); *A.P. Deauville,* 2014 WL 7140041, at *4 ("[W]hether [the challenged] statements comply with FTC policy cannot be proven in this Court."); *Kind*, 627 F. Supp. 3d at 277 n.8, 284 n.12, 291 & n.24 (rejecting use of definitions in USDA/FDA guidance); *de Lacour*, 2024 WL 36820, *5-7 & n.7 (rejecting reliance on USDA, FDA, and BBB guidance). The Court should do the same here.[7]

---

[7] Plaintiff has misread *Kind* in previously arguing it is distinguishable because the FDA had not promulgated a final regulation on the meaning of "All Natural," whereas the FTC has promulgated a final rule as to "Made in USA." *See* ECF 53 at 2. While the *Kind* court took note of the FDA's unsuccessful attempt to promulgate an "All Natural" rule, its decision did not turn on that failure. Rather, the court (in a section of its opinion titled "No Objective Definition of 'All Natural' Exists") discussed the FDA's rulemaking process only to note that the process had identified a

### 3. Even If This Court Enforced the FTC Standard, Plaintiff Does Not Raise a Material Dispute of Fact Regarding Deception.

Finally, even if Plaintiff could prevail on the Court to apply the FTC's rule in this state-law case, there can be no genuine dispute that Handi-Foil's pans meet that standard.

To begin, "the final assembly or processing" of Handi-Foil's pans plainly occurs in the United States. SMF ¶ 39. Plaintiff has never contended otherwise.

As for the "significant processing" and "all or virtually all ingredients or components" prongs of the FTC standard, Plaintiff again offers no evidence that any material actually incorporated into Handi-Foil's pans was sourced outside the United States. *See infra* § I. As noted, each Handi-Foil pan is prepared according to a precise bill of materials identifying all components incorporated into the finished product, and for every pan or container at issue in this case, all such components (including the specific coil to be used) are sourced from domestic suppliers or made in-house by a Handi-Foil affiliate. *Id.* ¶¶ 12-13. Any suggestion that Handi-Foil manufactured any retail pan or container using an imported coil (or coil imported by one of the Domestic Coil Suppliers) is mere speculation belied by the ample discovery record. *See D'Amico*, 132 F.3d at 149 ("conclusory allegations" and "speculation" insufficient on summary judgment).

Plaintiff is therefore left (again) to rely on the specter that Handi-Foil's pans may trace to

---

"plurality of definitions" for "All Natural," thereby demonstrating the lack of any "single objective meaning." 627 F. Supp. 3d at 284. So too here—while the FTC has promulgated a "Made in the USA" standard, it is (by the FTC's own concession) inherently flexible and subjective.

Likewise, Plaintiff's attempt to distinguish *Honeywell* on grounds that it involved deceptive advertising under the federal Lanham Act rather than the NY GBL falls flat. *See* ECF 53 at 2. Courts have repeatedly observed that Lanham Act and NY GBL claims have "substantially similar" elements, and thus they commonly analyze the claims together. *See, e.g.*, *Playtex Prods., LLC v. Munchkin, Inc.*, 2016 WL 1276450, at *3 & n.2 (S.D.N.Y. Mar. 29, 2016). Indeed, the cited discussion from *Honeywell* concerns whether "Made in the USA" was materially false or misleading—the same question at issue here. Because Plaintiff has no evidence or argument beyond a nod to the FTC rule, she, like the *Honeywell* plaintiff, cannot survive summary judgment.

foreign-mined bauxite. But that, too, fails under the FTC standard. For one, the FTC recognizes that "where a raw material is not found or grown in the United States and that raw material does not constitute the whole or essence of the finished product," a product that incorporates that material may be marketed as "Made in the USA." 86 Fed. Reg. at 37027 n.63; *see also* FTC, Complying with the Made in USA Standard 35 n.19 (Dec. 1998), http://tinyurl.com/3rpjfpcr (explaining by way of example in prior FTC guidance that vanilla ice cream that uses imported vanilla beans (which are not grown in the United States) would still satisfy its standard). Even if one were to consider bauxite a "raw material" for Handi-Foil's pans, it would fall squarely within this exception. There can be no argument that bauxite—a brownish rock that does not bear any superficial, chemical, or other similarity to, for instance, a lasagna pan—constitutes "the whole or essence" of a Handi-Foil pan, and Plaintiff has *conceded* that bauxite today "is not commercially available in meaningful quantities or in the metallurgical grades necessary for aluminum metal production in the United States." Pl.'s Class Cert. Br. at 8; *see also* SMF ¶ 111.

Nor can Plaintiff dispute that any foreign-mined bauxite is "far removed" from Handi-Foil's pans. Plaintiff readily conceded that bauxite has to be substantially changed through numerous steps before it could be used to cook or store food, and would have to take on multiple different forms in the process. SMF ¶¶ 108-09 (admitting that, even in a very simplified example, there are at least five stages from the mining of bauxite to creation of a pan). Specifically, when used to make aluminum, bauxite must first be converted to alumina (again, a white powder-like substance). The alumina can then be smelted into primary aluminum—but, as set forth above, the Handi-Foil pans that Plaintiff allegedly purchased did not come from coils prepared from primary aluminum (only recycled aluminum), meaning that the primary aluminum would have had to be melted and used at least once (and often multiple times) before being melted again to prepare a

Handi-Foil coil.  As discussed above, given the recyclability of aluminum, this can mean the period between the mining of bauxite by some distant and unknown entity and the melting of a piece of aluminum scrap to prepare a coil for Handi-Foil likely spans years (if not decades).  *See infra* p.12. Even then, as described in detail above, the melted recycled aluminum must be cast, rolled, annealed, slit, and coated through a weeks-long process, and then stamped, pressed into a pan, embossed, curled, and more by HFA.  *See infra* pp.3-6.  Thus, any foreign-mined bauxite would plainly be "far removed" from the finished Handi-Foil product such that Plaintiff's Bauxite/Alumina Theory would not even establish a violation of her preferred definition of "Made in the USA."  Accordingly, no reasonable juror could find that distant bauxite renders Handi-Foil's "Made in the USA" labeling claim deceptive.

### B.    Plaintiff Has No Evidence of Injury.

Even presuming (counterfactually) that a reasonable consumer would be deceived by the (hypothetical) incorporation of foreign material in Handi-Foil's pans, Plaintiff's claims independently fail because she has no evidence of injury due to Handi-Foil's "Made in the USA" claim.  *See RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, 527 F. Supp. 3d 305, 321-22 (E.D.N.Y. 2021) (granting summary judgment in absence of actual injury); *Vaughn v. Consumer Home Mortg. Co.*, 470 F. Supp. 2d 248, 271 (E.D.N.Y. 2007), *aff'd*, 297 F. App'x 23 (2d Cir. 2008).  When there is "no actual harm besides the alleged deceptive act," there can be "no violation of Section 349."  *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004); *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 363 (E.D.N.Y. 2022) (same with § 350).

### 1.    There Is No Evidence Plaintiff Paid a Price Premium.

The only injury Plaintiff alleged in her complaint was the payment of a price premium due to the "Made in the USA" claim—*i.e.*, that she paid more for the pans because that claim appeared on the label.  *See* Am. Compl. ¶¶ 50, 59.  But notwithstanding lengthy discovery, Plaintiff has no

evidence that Handi-Foil's products commanded a higher price due to that representation.

Plaintiff's purported damages expert, Dr. Donald May, concededly did *not* determine whether there is any price premium associated with the "Made in the USA" claim. In fact, as explained in Handi-Foil's contemporaneously filed motion to exclude him, Dr. May did little at all as part of his assignment: his barebones opinions are reflected in a 9-page report, which he largely recycled from another case for Plaintiff's counsel. Ex. 5 (May Dep. Tr.) 21:17-19, 68:15-71:21. Dr. May did not review *any* case-specific material beyond the Complaint and the Handi-Foil website. *Id.* at 35:16-37:12. And although he hypothesized that it may be "possible" to determine damages in this case, he did not actually perform a single calculation to determine injury (including any price-premium calculation), in part because he never attempted to obtain the necessary data (and does not know if such data exists). *See id.* at 25:15-26:3, 40:6-54:5, 147:3-148:8.

Given these failures, Dr. May testified that he "do[es]n't know … if there is a price premium associated with the challenged 'Made in the USA' or 'Made in America' representation," and he "certainly do[es]n't know the magnitude of any such price premium if there was to be one." *Id.* at 47:18-48:3. In fact, having failed to obtain data, develop a formula, or run any calculation at all, Dr. May was forced to admit that it was possible that, if eventually run, his calculation "could yield either no price premium … or even a negative premium." *See id.* at 48:10-15. Thus, far from providing evidence of actual injury, Dr. May's "incomplete expert analys[i]s," which "may or may not apply to the facts of the case," cannot defeat summary judgment. *Ortho Diagnostic Sys., Inc. v. Abbott Lab'ys., Inc.*, 920 F. Supp. 455, 471 (S.D.N.Y. 1996); *see also Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) ("[a]n expert's opinions that are without factual basis," "based on speculation or conjecture," or "conclusory" are "inappropriate material for consideration on a motion for summary judgment").

Rather than contend Dr. May's "analysis" establishes an injury, Plaintiff's response to Handi-Foil's pre-motion letter and her class certification brief attempt to concoct an injury based on Handi-Foil documents and Plaintiff's own testimony. These efforts fail. For instance, Plaintiff has noted that, in 2020, Handi-Foil increased the size of its "Made in the USA" statement. *Id.* But the mere fact that Handi-Foil changed the size of that representation does not establish that Handi-Foil believed it commanded any price premium, and Plaintiff cannot point to any evidence that Handi-Foil increased the price of its products because of the size of the claim. Plaintiff has also pointed to a single line toward the bottom of a slide in a Handi-Foil presentation to one of its customers (a supermarket), which provided as one reason that the retailer should carry Handi-Foil products: ██████████████████████████████████████████████████████████████

████████ *See* Pl.'s Class Cert Br. at 7; *see also* Ex. 18. But that single sentence has nothing to do with whether the "Made in the USA" statement on the product label merits a price premium; rather, as Handi-Foil's President explained (and the document itself makes clear), ████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 1 (Sarnoff Dep. Tr.) 81:3-20.

Finally, Plaintiff's own testimony that she herself was willing to pay more for a product with a "Made in the USA" claim does nothing to demonstrate that Handi-Foil responded to Plaintiff's supposed willingness by raising its prices, or that Plaintiff paid any hypothetical higher price. *See White v. Manhattan & Bronx Surface Transit Operating Auth.*, 2022 WL 4227289, at *5 (S.D.N.Y. Sept. 13, 2022) ("Plaintiff's subjective belief …, without more, is insufficient to sustain her claim at summary judgment."). Plaintiff therefore lacks any evidence—expert or otherwise—of injury from the "Made in the USA" claim.

### 2. Plaintiff's Other Damages Theories Are Legally Defunct.

Nor can Plaintiffs rely on any of her other theories of damages, namely full price restitution, profit disgorgement, or statutory damages. First and foremost, actual injury is a prerequisite to *any* recovery under Sections 349/350, regardless of the form of relief sought. *See RVC Floor Decor*, 527 F. Supp. 3d at 322; *see also Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000) ("a plaintiff must prove 'actual' injury to recover under the statute"). That limitation applies to statutory damages under the statute as well. *Esposito v. Info. Tech. Corp. of the Tri-States*, 2022 WL 1155917, at \*6-7 (S.D.N.Y. Apr. 19, 2022) ("Even a plaintiff seeking solely statutory damages must establish an actual injury" that is neither "speculative" nor "uncertain"). In other words, because Plaintiff has no evidence of injury due to the "Made in the USA" label, her claims fail at the threshold, and she cannot recover damages under any theory—price premium or otherwise.

In any event, Plaintiffs' non-price-premium damages theories fail, as she largely concedes. In moving for class certification, Plaintiff acknowledged that her full-price restitution and profit-disgorgement damage theories are "legally unlikely to succeed." Pl.'s Class Cert Br. at 19. Handi-Foil agrees, not least because neither theory measures any legally cognizable injury. Plaintiff has never argued, for instance, that her Handi-Foil products failed to function as intended or were useless. *See, e.g.*, *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 142 (E.D.N.Y. 2018) ("[I]t is well-settled that a consumer is not entitled to a refund of the price of a good or service whose purchase was allegedly procured through deception."); *Rice v. Penguin Purnam, Inc.*, 289 A.D.2d 318, 319 (NY App. Div. 2001). Plaintiff therefore cannot obtain any damages.

### III. AT A MINIMUM, HANDI-FOIL IS ENTITLED TO PARTIAL SUMMARY JUDGMENT.

While the above grounds merit summary judgment in its entirety, at the least, Handi-Foil is entitled to partial summary judgment as to its (i) roll-foil product and (ii) website representations.

24

**Roll Foil.**  Although pans and containers make up the substantial majority of Handi-Foil's business, Handi-Foil also markets aluminum roll foil as a very small part of its business.  SMF ¶ 120.  As with Handi-Foil's pans, Plaintiff alleges that Handi-Foil deceptively advertised its roll foil as "Made in the USA."  But Handi-Foil has not labeled its retail roll foil as "Made in the USA" during at least the last six years, SMF ¶ 122, and the statute of limitations runs for three years beginning "when plaintiff has been injured by a deceptive act or practice," *Nachman v. Tesla, Inc.*, 2023 WL 6385772, at *3 (E.D.N.Y. Sept. 30, 2023).  There is no evidence that any New York consumer has purchased six-year-old roll foil within the last three years—indeed, Plaintiff herself conceded that not only has she never purchased Handi-Foil's roll foil, but she has never *seen* it in a store.  *See* SMF ¶ 121.  And even if such a consumer existed, Plaintiff again has no evidence of either deception or injury, as she did not pursue any discovery related to roll foil whatsoever.  Any claim based on this years-old product simply fails.

**Handi-Foil's Website.**  Plaintiff's website-related allegations fare no better.  Although Plaintiff swore in an interrogatory response served by her attorney that she had "relied on the Handi-Foil website" in purchasing Handi-Foil's products, SMF ¶ 125, she later conceded that she does not recall ever visiting Handi-Foil's website prior to making a Handi-Foil purchase, *id.* ¶ 126.  Plaintiff therefore cannot establish that she was injured "as a result" of any website representation and therefore cannot establish a claim based on the website.  *Kind*, 627 F. Supp. 3d at 280.

## CONCLUSION

For these reasons, the Court should grant summary judgment in favor of Handi-Foil.

Dated: January 18, 2024

Respectfully submitted,

*/s/ Michael A. Glick*
Michael A. Glick
Megan McGlynn (*pro hac vice*)
Gabrielle Durling (*pro hac vice*)
1301 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 389-5000
Fax: (202) 389-5200
michael.glick@kirkland.com

*Attorneys for Handi-Foil Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2024, I served the aforementioned document on counsel for Plaintiff pursuant to Paragraph 3(C) of the Court's Individual Motion Practices.

*/s/ Michael A. Glick*
Michael A. Glick