UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MERRYL OSDOBY, on behalf of herself
and others similarly situated,

Case No.: 2:22-cv-04199-NG-JMW

    Plaintiffs,

v.

HANDI-FOIL CORP.

    Defendant.

## REPORT OF DONALD M. MAY PHD, CPA

July 28, 2023

*Background and Assignment*

1. My name is Donald M. May and I am Managing Partner of DMA Economics, a New York-based consulting and litigation support firm based in New York.

2. I hold a Doctor of Philosophy (Ph.D.) in finance and economics from the University of Chicago Graduate School of Business (now the Booth School of Business), a Master of Business Administration (MBA) degree in statistical methods and finance from the University of Chicago Graduate School of Business, and a Bachelor of Science in Business Administration (BSBA) degree in accounting from the Roosevelt University. I have passed the Certified Public Accountant (CPA) exam in the State of Illinois.

3. I was a professor of Accounting, Finance and Economics at the Massachusetts Institute of Technology Sloan School of Management, where I conducted research and taught classes on financial statement analysis, econometric research methods, statistics, and valuation. I also currently teach classes on economic damages for the Practicing Law Institute.

4. I have spent over 30 years analyzing and opining on valuations and damages in both litigation and non-litigation contexts and across numerous industries. A copy of my *curriculum vitae* is attached as Appendix A, which includes publications and testifying experience, including all other cases in which, over the past 4 years, I have provided testimony as an expert at trial or at deposition.

5. I have been asked by Plaintiff in the above captioned matter to calculate class action damages related to alleged deceptive and misleading business practices of Handi Foil Corp., ("Handi Foil" or "Defendant") with respect to their marketing and sales of aluminum foil products (the "Products").

6. DMA Economics is being compensated for my time at a rate of $750 per hour for my time. DMA Economics' as well as my compensation is not contingent on the conclusions reached in this report or the outcome of this litigation. My total fee will depend on the hours I expend.

7. I am aware of no professional or personal conflicts of interest that prohibit me in any way from offering objective professional opinions in this affidavit. I have no present or prospective interest in the issues that are the subject of these lawsuits, and no personal interest with respect to the parties to these actions.

8. I have reviewed the First Amended Complaint of Plaintiff Merryl Osdoby

("Plaintiff") against Handi Foil Corp., ("Handi Foil" or "Defendant") along with the Handi Foil website.

9. According to the Complaint[1], it is alleged that;

> "Handi-foil sells aluminum foil pans, aluminum foil containers, aluminum foil roll, laminated board lids and plastic lids (the 'Products') in national supermarket chains such as Stop & Shop and ShopRite, and in other major retail locations such as Walmart and Target."[2]
>
> "Handi-foil, through its marketing and labeling, is fraudulently misrepresenting that all of its products are made in the USA, when in fact virtually all of the material used in Handi-foil products is imported from China, Turkey, Italy, Russia, Portugal, Germany, Belgium and Greece."[3]
>
> "Handi-foil aggressively promotes the Products as made in the USA, although the Products are virtually all comprised of foreign-sourced material."[4]
>
> "As a result of Defendant's deceptive marketing and labeling, Plaintiff and the Class were fraudulently induced to purchase the Products and pay a premium for them."[5]
>
> "Plaintiff, on behalf of herself and other consumers that purchased the Products in New York State, seeks redress for the misrepresentations and deceptions appearing in Handi-foil's marketing and on Handi-foil's labeling."[6]

10. "Plaintiff seeks relief in her individual capacity and as representative of all others who are similarly situated. Pursuant to Rules 23(a) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the following class (the 'Class'):

> All persons who purchased the Products in New York State during the applicable limitations period primarily for personal, family, or household purposes, and not for resale."[7]

11. DMA has been asked to describe how we would calculate damages common to

---

[1] MERRYL OSDOBY, on behalf of herself and all others similarly situated v. HANDI FOIL CORP., UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK, Case No.: 2:22-cv-04199-NG-JMW,. (the "Complaint").
[2] The Complaint, ¶ 4.
[3] *Id.*¶ 5.
[4] *Id.*¶ 6.
[5] *Id.*¶ 7.
[6] *Id.*¶ 8.
[7] *Id.*¶ 34.

all class members under three alternative theories of damages; full-price restitution, profit disgorgement and price premium restitution.

12. Various methods exist to calculate damages associated with the mislabeling of the Product. For purposes of the calculation of restitution, disgorgement, and price premium damages associated with the deceptive labeling, I assume that Plaintiff's allegations are true. Based on my review of all materials to date, several methods, which are both feasible and rigorous, exist to calculate disgorgement, restitution, and damages to the proposed class using evidence that is common to all class members.

### *Full Price Restitution Damages*

13. If the Court determines that a mislabeled product is illegal to sell, purchase or possess and therefore, from a legal standpoint, has no value. And if the Court determines that the Product is worthless, the aggregate damages to the Class (Full Price Restitution Damages) can be calculated from the retail sales data in the possession of the Defendant.

14. Restitution in the form of the return of the purchase value to the Plaintiff and members of the class can be determined in alternative ways depending on how the Defendant sells the product to consumers. The information needed to perform these calculations is possessed by the Defendant and/or is available from the Defendant. As information in the custody of Defendant is provided to me, I can perform the necessary damages calculations.

15. Full-Price Restitution Damages will thus be calculated as units sold of the Product during the Class Period and in the Class multiplied by the average retail prices per unit of those Products sold during the Class Period in the Class.

### *Profit Disgorgement Damages*

16. If the Court determines that the profit disgorgement is the appropriate remedy for damages, Defendant possess the data to calculate Profit Disgorgement Damages.

17. Profit Disgorgement will be calculated as units sold of the Product during the Class Period and in the Class multiplied by the profit of the Product per unit (wholesale price per unit less cost per unit) during the Class Period and in the Class.

18. Revenues or profits received at the wholesale level can be calculated directly using Defendant's data on units sold, wholesale price per unit and cost of goods sold

including packaging, materials and transportation costs for Products sold in the Class over the Class Period.

*Price Premium Restitution Damages*

19. An alternative measure of restitution would result from estimating the value of the labeling characteristic itself. This approach refers to the principle that a buyer may recover from the seller as damages the value of certain product characteristics such as the "Made in the USA" claim associated with the product but that in actuality is not. To illustrate, suppose that the retail price for one of Defendant's challenged product is $1. If it is calculated that 10% of this price is attributed to the misrepresentation of the product through a false labeling claim, then the restitution is 10 cents. The value of the product labeling claim will be determined through the use of the widely accepted hedonic regression approach described below.

20. The price premium associated with the Products claims can be calculated using Defendants pricing and sales data along with third party data on retail sales prices of aluminum pan products that includes do not include such claims, while controlling for other factors that may impact the price of these products. Such data is available through third party vendors such as Information Resources, Inc. (IRI) and Nielsen. Appendix B details stores that have data available from IRI for aluminum pan products.

21. The methodology used to measure the price premium is known as hedonic regression analysis and is well established in the scientific community and in the courts.

22. Regression analysis involves the relationship between a variable to be explained, known as the "dependent variable," such as the quantity demanded of a particular good or the price of a particular good, and additional variables that are thought to produce or to be associated with the dependent variable, known as the "explanatory" or "independent" variables. An "error term," which represents all other factors not accounted for by the set of explanatory variables, also is a fundamental component of the regression model. Regression analysis may be useful in determining whether a particular effect is present as well as in measuring the magnitude of a particular effect. Regression analysis is a scientifically accepted methodology used to isolate whether a particular relationship exists between the dependent and explanatory variables and for measuring the magnitude of this relationship while controlling for other factors that could also influence the dependent variable.

23. The dependent variable in these situations corresponds to the prices of the Products as well as prices of comparable products.

24. The type of regression methodology used to analyze how consumers value different product characteristics is known as hedonic price analysis and is commonly used in litigation (see, for example, Abere, 2010). With the use of this type of regression analysis, the supposition is that individual aluminum pan products are composed of various attributes. The bundle of attributes defines the unit price, which implies that product prices can be decomposed into implicit prices for individual attributes. These implicit prices are called hedonic prices. Intrinsic values of the various attributes may be recovered by specifying the prices of aluminum pan products as a function of these attributes.

25. The hedonic regression analysis is performed using actual pricing and product attribute information. Hedonic regression does not require individual analysis to provide a class-wide result.

26. The hedonic regression can be expressed as:

$$P_i(Z) = P_i(Z_1, Z_2, Z_3, \ldots Z_N)$$

Where P is the Price of product "i", and each Z factor is a product attribute variable.

27. In this matter, the hedonic regression is designed to sperate out the prices consumers pay and/or the amount of revenue or profit that the Defendant will garner for each product attribute.

28. In what is known as the semi-log format, the regression will allow us to calculate the value of each attribute as a percentage of total product price, one example of this specification would be:[8]

$$\log P\,(Foil) = \sum_{n=1}^{N} (\beta_n * z_n) + \varepsilon$$

Where $\log P\,(Foil)$ is the natural log of the price per pan of the Product and comparable aluminum pan products. Beta is the coefficient representing the percent of the Product price attributable to attribute z (of which there are N total attributes), and is the error term.

---

[8] The logarithm of a number is the exponent to which another fixed value, the base must be raised to product that number. The natural logarithm has the number *e* (approximately 2.718) as its base. The natural logarithm is sometimes noted as *ln*(x).

29. To implement the hedonic regression approach, we must consider prices of the Defendant's Products as well as prices of comparable products (with or without the labeling claim). In this way, with the hedonic regression approach, we can identify the impact of the labeling claim on the prices of aluminum pan products in general and the Product in particular.

30. Using the hedonic regression approach allows us to center attention on the prices of similar products, some of which have Made in the USA labeling claims and some of which do not, while controlling for other attributes in (e.g., brand, pan type, and pan size), that may influence price. With this type of analysis we can ascertain the impact of the labeling claim on prices of particular aluminum foil products, labeled as Made in the USA and how much of the price is attributed specifically to this claim.

31. The hedonic regression approach is often used to calculate the value of individual product attributes and in many different markets. There is extensive research on using this method in the consumer product market and for products and labeling claims similar to those at issue in this litigation.

32. The hedonic regression approach has been used extensively in economics, dating back to the work of Waugh in 1928. Waugh (1928) observed that prices of certain fresh vegetables varied considerably on the Boston wholesale market. As such, Waugh regressed these prices on various physical characteristics of the vegetables. The name "hedonic pricing method" generally is attributed to Court (1939). Court applied this method to automobiles and included several technical characteristics of the car in the hedonic price analysis. Griliches (1961) revived the notion of the hedonic pricing method, and this revival initiated a vast body of empirical work. Hedonic regression rose to prominence in 1974 when economist Sherwin Rosen published his paper *Hedonic Prices and Implicit Market: Product Differentiation in Pure Competition*. Rosen (1974) details the economic and statistical theory behind hedonic regression.

33. Importantly, the hedonic regression methodology not only has been widely has been implemented in situations specifically related to labeling claims and country of origin claims. To illustrate, Anstine (2007) used a hedonic regression analysis to estimate the premium associated with yogurt labeled "All Natural." The estimated premium associated with this "All Natural" claim was statistically significant with the magnitude of the premium being approximately 34 cents per ounce controlling for all brand and other labeling attributes. In percentage terms, this premium was on the order of 40 percent. Li and Hooker (2009) investigated the use of food safety claims on new packaged food products. Based on hedonic price models, they identified a significant 5 cent premium per ounce for a "preservative free" claim in yogurts. Muth et. al (2012) estimated a semi-log hedonic price

regression for five breakfast bar and cereal product categories using Nielsen Scantrack scanner data for 2004. They found that labeling statements for these products often were associated with substantially higher prices. Xiao (2012) analyzed price differentials attributable to observable characteristics of retail milk and oatmeal using the hedonic pricing methodology. Satimanon and Weatherspoon (2010) determined price premiums of sustainable attributes for fresh eggs by using hedonic analysis. Welfare-managed eggs had a notable premium equal to 3.57 cents per egg. Combris, Lecoq, and Visser (1997) used the hedonic pricing methodology to study the price-quality relationship associated with Bordeaux wine.

34. Hedonic regression has also been used extensively to calculate the price premium associated with country of origin ("COO") labeling claims. For example, Hu and Baldwin (2018) use hedonic regression and find the country of origin has a statistically significant impact on the price premium paid for wines purchased in China. Zhang and Jin (2020) found that for dairy products sold in China, those that came from Germany, New Zealand, France, the Netherlands, and Spain all earned a price premium on infant formula.

35. The use of hedonic regression is thus a well-established scientific method that can be used to calculate the price premium associated with the mislabeling COO claims shown on the Product during the Class Period. This price premium will then be applied to the units sold during the Class Period and in the Class to determine total damages to the Class under the Price Premium Restitution Approach.

36. I am currently in the process of obtaining data on unit sales, retail prices and product attributes from Defendants, comparable products, and IRI. Once I obtain this data I will specify the parameters and attributes that will be included in the hedonic regression model and the econometric rational for their inclusion.

*Summary and Conclusions*

37. In my opinion, aggregate class-wide damages based on any theory of disgorgement or full or partial price restitution that the Court determines is the proper measure of damages based on the facts of this case, can be calculated using scientifically well-established economic and statistical principles and methodologies, using factual information and data that is readily available from the Defendant and third party vendors.

38. Importantly, these proposed methodologies for calculating disgorgement or restitution damages not only do not require any information specific to individual class members, but also are consistent with the notion of rigorous analyses.

39. In reaching my opinion, I relied on my education and experiences at various well-respected universities (namely the University of Chicago and the Massachusetts Institute of Technology), over 30 years of analysis I have performed related to damages, the First Amended Complaint, excerpts from the Defendant's website and knowledge of the existence of data from the Defendant and from third-party vendors such as IRI.

40. I reserve the right to amend my opinion should new information come to light.

_____
Dr. Donald M. May
July 28, 2023

# References

Abere, A., 2010. "Using Economics to Measure Damages in Private Advertising Litigation," *The Adviser*, 1, 1: 14-17.

Anstine, J., 2007. "Organic and All Natural: Do Consumers Know the Difference?," *Journal of Applied Economics and Policy* 26, 1: 15-27.

Combris, P., S. Lecoq, and M. Visser, 1997. "Estimation of a Hedonic Price Equation for Bordeaux Wine: Does Quality Matter?," *The Economic Journal*, 107, 441: 390-402.

Court, A. T., 1939. "Hedonic Price Indexes with Automobile Examples" in *The Dynamics of Automobile Demand*, New York: The General Motors Corporation.

Griliches, Z., 1961. "Hedonic Price Indexes for Automobiles: An Econometric Analysis of Quality Change," in *The Price Statistics of the Federal Government*, New York: Columbia University Press.

Hartman, R. S. and M. J. Doane, 1987. " The Use of Hedonic Analysis for Certification and Damage Calculations in Class Action Complaints," *Journal of Law, Economics, & Organization*, 3, 2: 351-372.

Hirogaki, M, 2013. "Estimating Consumers' Willingness to Pay for Health Food Claims: A Conjoint Analysis," *International Journal of Innovation, Management, and Technology*, 4,6: 541-546.

Hu, Lala and Andrea Baldin, 2018. "The Country of Origin Effect  A Hedonic Price Analysis of the Chinese Wine Market," *British Food Journal,* 120(6), 1264-1279.

Li, J. and N.H. Hooker. 2009. "Documenting Food safety Claims and Their Influence on Product Prices," *Agricultural and Resource Economics Review*, 38,3: 311-322.

Markosyan, A., T. I. Wahl, and J. J. McCluskey, 2007. "Functional Foods in the Marketplace: Willingness to Pay for Apples Enriched with Antioxidants," Selected Paper Prepared for Presentation at the AAEA Annual Meeting, Portland, OR.

Mayen, P. D., 2013. "Influence of Antioxidant Information on Consumer Preference for Tree Nuts," Working Paper, New Mexico State University.

Miskolci, S., 2011. "Consumer Preferences and Willingness to Pay for the Health Aspects of Food," *Acta Universitatis Agriculturae et Silviculturae Mendelianae Brunensis,* 54, 4: 167-175.

Moro, D., P. Sckokai, and M. Veneziani, 2012. "Consumers' Willingness to Pay for a Functional Food," Paper Prepared for Presentation at the 1st AIEAA Conference, Towards a Sustainable Bio-Economy: Economic Issues and Policy Challenges.

Muth, M. K., C. Zhen, J. Taylor, S. Cates, K. Kosa, D. Zorn, and C. Choiniere, 2013. "The Value to Consumers of Health Labeling Statements on Breakfast Foods and Cereals," *Journal of Food Products Marketing* 19:279-298.

Rosen, S. 1974. "Hedonic Prices and Implicit Markets: Product Differentiation in Pure Competition." The Journal of Political Economy 82(1): 34–55.

Rubinfeld, D. L., 2000. "Reference Guide on Multiple Regression," in Federal Judicial Center, *Reference Manual on Scientific Evidence*, pp. 179-227.

Satimanon, T. and D.D. Weatherspoon, 2010. "Hedonic Analysis of Sustainable Food Products,"*International Food and Agribusiness Management Review*, 13, 4: 57-74.

Waugh, F.V., 1928. "Quality Factors Influencing Vegetables Prices," *Journal of Farm Economics* 10: 185-196.

Xiao, J. 2012. "A Hedonic Analysis of Retail Milk and Oatmeal Attributes in Quebec," Department of Agricultural Economics, McGill University, Montreal.

Zhang, Yan and Shaosheng Jin, 2020. "Hedonic valuation of country of origin in the Chinese dairy market," *International Food and Agribusiness Management Review* Volume 23, Issue 3,

# Appendix A – Curriculum Vitae

# Donald M. May

Direct: (212) 390-0575
dmay@dmaeconomics.com

**EDUCATION**

| | |
|---|---|
| PhD (Financial Economics) | University of Chicago, 1993 |
| MBA (Finance) | University of Chicago, 1987 |
| BSBA (Accounting) | Roosevelt University, 1985 |
| CPA (Illinois) | State of Illinois, 1985 |

**SUMMARY**

Don May is Managing Partner at DMA Economics LLC and possesses over 30 years' experience in consulting, valuation and litigation support as well as researching, publishing and teaching at the university level. His experience includes implementing a broad range of damage analyses and valuations for businesses of various sizes and in numerous industries. Prior to founding DMA Economics, Dr. May was Managing Director at Berkley Research Group and the Principal in charge of valuation and litigation support services for a regional accounting firm, a Managing Director for PricewaterhouseCoopers and a professor at the Massachusetts Institute of Technology - Sloan School of Management.

Dr. May has prepared expert reports and testified in federal and state courts as well as AAA, JAMS, and FINRA arbitration hearings and has effectively communicated as an expert witness testifier and consultant in several multi-million-dollar cases.

Dr. May has been published in several distinguished academic and practitioner journals such as *The Journal of Finance, The Quarterly Review of Economics and Finance, Hedge Fund Law Review,* and is currently an editorial board member of *The Journal of Business Valuation and Economic Loss Analysis.*

**TRIAL, ARBITRATION AND DEPOSITION TESTIMONY, LAST FOUR YEARS**

*A. Link Partners, Inc. v. Merrill Lynch, Pierce, Fenner & Smith Incorporated, FINRA Arbitration No. 21-02535, 2023.*

*Bankers Conseco Life Insurance Company and Washington National Insurance Company v. Wilmington Trust, National Association, Supreme Court of the State of New York, County of New York, Index No. 652057/2019, 2022.*

*Clifford Casemento Jr. v. Volmar Construction Inc,, Efstatathia Marinakis, and John Volandes, United States District Court Southern District of New York, No. 20 CV 0944(LJL), 2022.*

*Biddle Sawyer Pharma, LLC, v. PHT International, Inc., American Arbitration Association C.A. No. 01-19-0004-2322, 2022.*

*Vargas, Almonte v. City of Peekskill, Cornell Hammonds, and David Rambo, United States District Court Southern District of New York, No. 7:20 CV 10143 (KMK-JCM), 2022.*

*LaFosse, Pam individually and on behalf of all others similarly situated and Does (1-100) on behalf of themselves and all others similarly situated, v. Sanderson Farms, Inc,. United States District Court For The Northern District of California, Case No. 19-CV-06570-RS, 2021.*

*Willis/Terry/Robinson/Reynolds/Crosson/Salyers/Moerschel/Eaton/Black v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*McLaughlin/Manske/Shultz/McKechnie/Simmons/Beckman/Manirath/Reynolds v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Parker/Hottel/Schenk/McCollum/Cook/Connell/Slattery/Jansinski/Maxwell/Garver/Wiese/Valverde v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Stoneking/DuCharme/McMullin/Squires/Brown/Francois/McBride/Byers/Allen v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Schlintz/Tuescher/Floyd/Revis/Bolch/Coulter/Cook/Stiff v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Elliott/Bell/Harris/Rutkowski/Berkstresser/Neff/Kincaid/Sheeders/Schwartz/Kolaoski/Tsang/Owens v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Murphy/Dunn/Adkins/Mergen/Bowen/Scieszinski/Stoke/Harper/Inman/Breckenridge-Mitchell/Clyma/Garvey/Teghtmeyer/McGowan/Wright v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Lanigan/Walter/Rellihan/Kemp/Jensen/Denny-Glynn/Alter/Ready v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Miller/Redwing/Carcraft/Wineland/Fortune/Crawford/Welch/Brandt/Gordanier/Moentmann/Kaufmann/O'Neal/Hankins/Griem v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2021.*

*Moffitt/Shank/Hoover/O'Mara/McClellan/McCombs/Hancock/Geer/Freeman/Donnici v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2020.*

*Oswald/Beaulieu/Woehrman/Goins/Johnson/Fogt v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2020.*

*Bates/VanKam/McVay/Kendall/Redwing/Filardo/Sutton v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2020.*

*Jones/Sturgeon/McGivern/Keller/Peoples/Gillespie/Cranmer v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2020.*

*Lovell/Blanck/Stottlemyre/Larson/Schell/Kane/Stalcup/Bonjour/Cross/Meyer/Shaw/Lanning/Rolf v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2020.*

*Parrish/Brooks/Hyland/Garrett/Biggs/Costanzo/Klassen/Reik/Clower/Axton/Lane/Cansler/Tillotson v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2020.*

*Schuerman/Edwards/Horseman/Schulte/Carey/Crocker/Vander Waerdt v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2019.*

*Operach/Bien-Amie/Terry/Krevitz/Carroll/Schuerman/Tritt/Scarbrough/Hamilton v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, Zoom hearing, 2019.*

*Percy Payne, individually and for his individual account damages on behalf of DST Systems Inc. 401(k) profit sharing plan v. The Advisory committee of the DST Systems Inc. 401(k) profit sharing plan, The plan compensation committee of the board of directors of DST Systems Inc., Ruane, Cunniff & Goldfarb, Inc., and John Does 1-20, American Arbitration Association, AAA No. 01-18-0003-0418, Zoom deposition, 2019.*

*Closeouts Surplus & Salvage, INC., D/B/A CSS, v. Cytosport Inc. and Allen Distribution, United Sates District Court District of New Jersey, 2:17-Cv-04619 (SDW) LDW), 2019.*

*Nasdaq Inc., v. Exchange Traded Managers Group LLC and ETF Managers Group, LLC, United States District Court Southern District of New York, Case No. 1:17-CV-08252 (PAE), 2019.*

*Megan Shmitt, Deana Reilly, Carol Orlowsky, and Stephanie Miller Brun individually and on behalf of themselves and all others similarly situated v. Younique LLC, United States District Court Central District of California, Case No. 8:17-cv-01397-JVS-JDE, 2018.*

*Broker Genius, Inc. v. Seat Scouts LLC and Drew Gainor, United States District Court Southern District of New York, Case No. 17-CV-08627(SHS), 2018.*

*David Grand. v. Lisa Schwarz, United States District Court Southern District of New York, Case No. 15-CV-8779 (KMW) (JLC), 2018.*

*SDM Investments Group, LLC. v. HBN Media, Inc., Duane Legate Wayne Starks, James Parker, John Zdanowski, Lester Cox, Frank Pindle, Michael Lemonier, Mathew Swanson and William B. O'Neal, In The Superior Court of Cobb County State of Georgia, Civil Action File No. 16108574, 2018.*

*HL Intermediate Holdco Inc. v. N.B. Love Industries Pty. Ltd., et al., United States District Court for the District of Delaware, Civil Case No. 15-1169, 2017.*

*Mitchell Barack v. Seward & Kissel, LLP, United States District Court Southern District of New York Civil Case No. 1:2016cv09664(WHP), 2017.*

*Kira Zander, individually and on behalf of all others similarly situated v. L Brands Inc., United States District Court Middle District of Florida Case No. 3:16-CV-1328-J-39JRK, 2017.*

*The State of Mississippi Ex rel. Jim Hood, Attorney General., v. Johnson & Johnson; Johnson & Johnson Consumer Companies Inc, Valeant Pharmaceuticals International, Inc.; Valeant Pharmaceuticals North America, LLC, In The Chancery Court of the First Judicial District of Hinds County, Mississippi, Civil Action No.: G2014-1207/03, 2017.*

*R&R NYC Group, LLC, f/k/a Relocation.com, LLC against Move Sales, Inc. and Move, Inc., in American Arbitration Association Claim No. 011500031105, 2017.*

*Marvel Worldwide Inc., v. iVerse Media LLC, JAMS Arbitration Tribunal, JAMS Ref. No. 1425017344, 2016.*

*C.H. Robinson Worldwide Inc., v. William F. Kratt IV, Roman Pankiy, and XPO Logistics, Inc., State of Minnesota, District Court, Count of Hennepin, Fourth Judicial District, Case No. 27-CV-12-16003 (RLA), 2016.*

*Jeffrey Camp and JC Real Estate Fund LLC v. Robert Berman, Robert Wong, and Avon Rock Hill LLC, United States District Court Southern District of New York Case No. 14-CV-1049 (KBF), 2016.*

*TomTom International B.V. v. Broadcom Corporation, In the United States District Court Central District of California, Southern Division, Case No. 8:14-CV-00475, 2015.*

*Inventory Recovery Corporation v. Ashley A. Gabriel and Richard Gabriel, United States District Court For The District of New Jersey, Civil Action No. 2:11-CV-01604, 2015.*

*Christopher Kinney, individually and on behalf of all others similarly situated v. Dole Packaged Food LLC, In the United States District Court of Arkansas Fayetteville Division, Case No. 14-5182 TLB, 2015.*

*Jared Gabriele, individually and on behalf of all others similarly situated v. Conagra Foods Inc., In the United States District Court for the Western District of Arkansas Fayetteville Division, Case No. 14-5183, 2015.*

*Brenna Center, individually and on behalf of all others similarly situated, v. Ocean Spray Cranberries, Inc. The United States District Court for the Western District of Arkansas Fayetteville Division, Case No. 5:14-cv-05211-TLB, 2015.*

*Blue Bank International N.V. formerly known as Premier Bank International, v. HSBC Securities (USA) Inc.; HSBC Bank USA N.A,; and Mark Richard Corbet Yale, Miami, Florida, FINRA Case No. 12-02582, 2014.*

*Infini Communications LLC, v. Communication Service for the Deaf Inc., Circuit Court of Cook County, Illinois, Chicago Illinois, Case No. 12-L-4502, 2014.*

*Edgar H. Bachrach, Sally B. Robinson, and Barbara B. James, v. Bachrach Clothing Holding Company, Sun Bachrach, LLC, Sun Capital Partners III QP, LP and Sun Capital Partners, Circuit Court of Cook County, Illinois, Chicago Illinois, Case No. 08-L-013712, 2014.*

*Ronald M. Tate, Trustee of the Ronald M. Tate Trust Dtd 4/13/88, and George Avakian, v. E*TRADE Financial Corporation, Mitchell H. Caplan, and Robert J. Simmons, United States District Court, Southern District, New York, Case No. 08 Civ. 7296 (JPO), 2014.*

*Liquid Realty Advisors III LLC et al. v. Jeffrey Giller et al., American Arbitration Association, San Francisco California, Case No. 74 166 00369 12 (AMCH), 2014.*

*Brandon Scott, individually and on behalf of all others similarly situated, v. Conagra Foods, Inc., In the Circuit Court of Washington County, Arkansas, Case No. CV 14-1119-7, 2014.*

*Colby Center, individually and on behalf of all others similarly situated, v. Conagra Foods, Inc., In the Circuit Court of Washington County, Arkansas, 5th Division, Case No. CV 14-1118-5, 2014.*

## PUBLICATIONS, LAST 15 YEARS

"Using Ex-ante and Ex-post Benchmarks in Estimating Damages" – *The Value Examiner*, May/June 2012

"Surviving Daubert: Bad Benchmarking Puts Cases at Risk Expert Witnesses Misstep by Using the Wrong Benchmarks to Calculate Damages", *Wall Street Lawyer*, December 2011

"Factors to Consider When Hiring an Expert" Claims Journal, May 26, 2011

"As Traditional Methods Fail in a Flood of Bad News, Courts Should Turn to Techniques Used by Investment Analysts to Calculate Shareholder Damages" *Securities Litigation Report*, January, 2011, Volume 8, Issue 1

"Strategies for Avoiding Valuation Disputes in Connection with Breakups of Hedge Fund General Partnerships", *Hedge Fund Law Review*, June 11, 2010, Volume 3, No. 23

"Wall Street Style Valuation Assumptions Are Popular & Often Wrong – Discounted Cash Flow Methodology Give Litigators the Upper Hand" *Securities Litigation Report*, May 2010, Volume 7, Issue 5

"Getting the Most from Technology: Keys to Better Decision-Making," *American Banker*, March 28, 2003

Winter 2001 *PwC Retail Report* (referenced in the Wall Street Journal and CNBC), 2001

"The Performance of Firms Before and After They Adopt Accounting-Based Performance Plans" (with Raymond M. Brooks and Chandra S. Mishra), *The Quarterly Review of Economics and Finance*, vol. 41, issue 2 (2001)

"The Effectiveness of Long-Term Accounting-Based Incentive Plans" (with Chandra S. Mishra and David H. Gobeli), *Journal of Managerial Issues*, Volume XII, Number 1 (Spring 2000)

"Do Managerial Motives Influence Firm Risk Reduction Strategies?" *Journal of Finance* (1995)

"Federal Reserve Discount Rate Changes and Market Reaction," *Journal of Macroeconomics* (Spring 1992)


**GRANTS AND AWARDS**

University of Chicago, Graduate School of Business, PhD Fellowship, 1989-1993

Nanyang Technological University Teaching and Research Chair (first MIT Sloan School of Management junior faculty member to receive this endowed teaching and research chair), 1994-1997

MIT Leaders for Manufacturing Summer Teaching Award, 1995

Recipient, 1989 - 1992 University of Chicago PhD Grant and stipend


**AFFILIATIONS**
Editorial board for the Journal of Business Valuation and Economic Loss Analysis
American Finance Association
American Economic Association
American Accounting Association
Certified Public Accountant (CPA), State of Illinois, 1985

**Appendix B – IRI Store Coverage of Aluminum Pan Market Data**

Separately Attached